The facts which give rise to the present controversy are fully set forth in a previous opinion filed by me in this cause and reported in 107 N.J. Eq. 512. Pursuant to that opinion an order was entered dismissing the petition as to all parties except the complainant and except as to Aaron Kaufman, the purchaser at the foreclosure sale. The petition was retained as against the purchaser on the theory *Page 543 
that if the foreclosure proceedings and sale proved to have been fraudulent, an innocent purchaser, although he would be protected, might be held accountable for profits arising out of a fraudulent transaction.
The evidence submitted at the hearing on this petition showed that out of the proceeds of the $600 mortgage the following sums were paid in satisfaction of the prior $2,800 mortgage, and of taxes, a lien on the premises and properly payable by the mortgagee:
 Balance of principal and interest on mortgage .. $161.60
 1925 taxes and interest ........................ 139.51
 1926 taxes and interest ........................ 126.30
 _______
 $427.41

The balance of the proceeds was applied to purposes not referable to the mortgaged premises. Upon payment of these sums the $2,800 mortgage was marked "paid" upon the books of the building and loan association; but the bond and mortgage were retained by the ascociation, or its solicitor, uncanceled of record, although, as a matter of fact, the mortgage was sent to the solicitor of the association for cancellation but was not canceled. After the execution of the $600 mortgage by Mrs. Dancy, the association's solicitor certified that it was a first lien on the premises. As stated in my former opinion, the petitioner claims that as the $2,800 mortgage had been paid, and as the $600 mortgage was a lien, if a lien at all, only on the widow's unassigned right of dower which terminated on her death, the complainant had no right to foreclose these mortgages; that the foreclosure and sale were wrongful and fraudulent as to these petitioners, and that, therefore, the building and loan association is accountable to the petitioner for the full value of the premises at the time of the foreclosure sale. The only questions here involved are those respecting the accountability of the association for the alleged wrongful foreclosure, and the alleged liability of the purchaser at the sheriff's sale to account for his profits in the transaction. *Page 544 
No doubt the right to foreclose a mortgage is terminated by its payment, and a mortgagee wrongfully foreclosing or exercising a power of sale, is accountable to the injured party for the full value of the property sold. Melick v. Voorhees, 24 N.J. Eq. 305; affirmed, 25 N.J. Eq. 523; Burnett v. Dunn, 180 N.C. 117;104 S.E. Rep. 137; 19 R.C.L. tit. "Mortgages" §§ 408, 431; 41C.J. tit. "Mortgages" §§ 1068, 1119, 1415, 1461, 1464, 1501;Thom. Mort. 403. But even if a mortgage has been paid and satisfied of record, it may, under some circumstances, be reinstated and foreclosed if the ends of justice require it.Seeley v. Bacon, 34 Atl. Rep. 139; Kocher v. Kocher, 56 N.J. Eq. 545; Coudert v. Coudert, 43 N.J. Eq. 407; Scardone v.Sozzi, 108 N.J. Eq. 415. A court of equity will keep an encumbrance alive or consider it extinguished as will best serve the purpose of justice and the actual and just intention of the party. Kinkead v. Ryan, 65 N.J. Eq. 726.
As to the $600 mortgage, it is argued both that it is void and valid, on the authority of Morris v. Glaser, 106 N.J. Eq. 585.
But the extent of that decision, so far as it related to the widow's mortgage of her dower interest, was only to the effect that a widow may, in conjunction with an heir who has the legal title to an undivided interest in the premises, execute a valid mortgage which will be sustained in equity as an equitable assignment of her right to compel admeasurement or assignment of dower consummate; and that she was estopped to deny the validity of her own mortgage. See syllabus, paragraphs 17, 19 and 22,Morris v. Glaser. It was not there necessary to determine the effect of a widow's mortgage of her unassigned dower which was not joined in by an heir with legal title, nor is it necessary to pass upon that question here. Whatever the effect of Mrs. Dancy's mortgage as an encumbrance, such rights as were subject to the mortgage terminated at her death, and, at the time of the foreclosure, it had spent its force and ceased to be a lien on anything. Complainant's right of foreclosure depends, therefore, upon its rights under the first mortgage and under the circumstances of this case it was entitled to *Page 545 
subrogation to the lien of the first mortgage for such sums as were paid by it in satisfaction of that mortgage and prior liens. The fact that the $2,800 mortgage was not canceled of record, and that the solicitor of the building and loan association certified that Mrs. Dancy's mortgage was a first lien, indicate that it was the intention of the parties that the moneys advanced by the association for the satisfaction of the $2,800 morgage should be secured by another mortgage which would be a first lien upon the premises. That being so, and the building and loan association having furnished the money for that purpose, under well-recognized equitable principles, it should be protected.Gore v. Brian, 35 Atl. Rep. 897. The law of subrogation applicable to these circumstances is fully discussed in the following authorities: Shinn v. Budd, 14 N.J. Eq. 234; Coe v.New Jersey Midland Railway Co., 31 N.J. Eq. 105, 136;Tradesmen's Building and Loan Association v. Thompson, 32 N.J. Eq. 133; Van Winkle v. Williams, 38 N.J. Eq. 105; In re NorthRiver Construction Co., 38 N.J. Eq. 432; Hackensack Savings Bank
v. R.P. Terhune Manufacturing Co., 45 N.J. Eq. 610; Kocher v.Kocher, supra; Mills v. Hendershot, 70 N.J. Eq. 258; Seeley
v. Bacon, supra; Kinkead v. Ryan, supra; Troxall v.Silverthorne, 11 Atl. Rep. 684; 25 R.C.L. tit. "Subrogation" §26; 37 Cyc. 382 Paragraph B; page 383, subdivision V; page 398,Paragraph 5; page 444, Paragraph H-1; page 446, Paragraph H-1;pages 469, 470, 471, Paragraph L-1 and L-2; 3 Pom. Eq. Jur. §§1211, 1212; 5 Pom. Eq. Jur. §§ 2347, 2351, 2906, 2907 and notes. The authorities are also collected in a note to 5 L.R.A.
(N.S.) 838 and 46 L.R.A. (N.S.) 1049.
Counsel for the petitioners claims, however, that the right of subrogation, if any, was in the widow because it was her money, obtained upon the security of her mortgage, which was used to pay the prior mortgage. The widow was undoubtedly entitled to subrogation. Becker v. Carey, 36 Atl. Rep. 770; Woods v.Wallace, 30 N.H. 384. But her right inures to the benefit of the building and loan association which furnished her the money.37 Cyc. 383 subdivision V; *Page 546 Huston's Appeal, 69 Pa. St. 485. The complainant is not a mere volunteer or a stranger to the original mortgage. It was the holder of that mortgage, the creditor whose debt it paid in part, with its own money. Seeley v. Bacon, Coe v. New JerseyMidland Railway Co., Tradesmen's Building and Loan Association
v. Thompson, In re North River Construction Co., and Kinkead
v. Ryan, supra, all involved conventional subrogation; but it is not necessary to spell out a conventional subrogation here. In37 Cyc. 469, 470 ¶ L-1, the rule is stated that "generally, where it is equitable that a person furnishing money to pay a debt of another should be substituted for the creditor or in the place of the creditor such person will be subrogated." Afortiori, where he advances money to pay a debt due to himself. In such case, the consideration for the advance failing, the debt itself remains unpaid in equity and subrogation is unnecessary. But if application of the doctrine of subrogation is necessary, it is a "pure equitable subrogation vesting upon the ground of mistake, or failure of consideration and not a conventional subrogation." Ibid. Whether we consider the first mortgage as not having been paid, in which case there would be no question of complainant's right to foreclose; or the complainant entitled to subrogation, the result is the same. A subrogee stands in the shoes of the creditor whose claim he pays and is entitled to all his remedies and means for enforcement of payment, of which foreclosure here was the most appropriate. Ibid. This being so, there was no wrongful foreclosure and no fraud. There was, however, error on the part of the master in computing the amount due on the two mortgages. Both the master and the solicitor of the building and loan association, who, as a matter of fact, prepared the master's report, misconceived the basis of the complainant's right to recover. The complainant had no right to a decree for anything above that portion of its money which was applied to the payment of valid liens and encumbrances against the premises, plus interest and costs, and it will, therefore, be required to account to the petitioner for the excess which it received. For the balance of *Page 547 
the debt, recourse, if any, can be had only against the widow's estate by suit on her bond.
There being no fraud either in the inception of this transaction which resulted in the $600 mortgage, or in the foreclosure, the question of liability of the purchaser at the foreclosure sale to account for the profits on his resale does not arise.