THOMAS J. O'NEILL, TRUSTEE IN BANKRUPTCY FOR WASHINGTON TOWNSHIP RACQUET CLUB, INC., PLAINTIFF, v. TOWNSHIP OF WASHINGTON, DEFENDANT.

Superior Court of New Jersey
Law Division Bergen County

Decided February 2, 1983.

*Robert J. Romano, Jr.* for plaintiff (*Andora, Palmisano, DeCotiis & Harris,* attorneys).

*Kenneth G. Poller* for defendant (*Wurtzel & Poller,* attorneys).

EVERS, J.T.C. (temporarily assigned).

This memorandum constitutes the opinion of the court concerning a motion for summary judgment filed by plaintiff Thomas J. O'Neill, trustee in bankruptcy for Washington Township Racquet Club, Inc. (taxpayer) against defendant Township of Washington (township) seeking a refund from township by reason of tax overpayments plus interest and costs, without right of offset for unpaid taxes for subsequent years. The issue involves the right of a municipality to set off against a tax refund due taxpayer, by an amount due to a taxing district for delinquent taxes. Questions concerning a bankruptcy action involving taxpayer and the effect of the federal Bankruptcy Act on this litigation must be addressed. Township has also raised several procedural objections and defenses. For reasons hereinafter stated, taxpayer's motion is granted.

Taxpayer filed tax appeals for 1978 and 1979. Taxpayer filed a chapter 11 petition in bankruptcy on May 19, 1980 in the United States Bankruptcy Court for the District of New Jersey.[1] On March 11, 1981 a Tax Court judgment, based upon a settlement, was entered. The settlement, and the judgment entered pursuant thereto, entitled taxpayer to a refund in the amount of $8,482.32 plus interest, *for 1978 only.* When judgment was entered taxpayer owed *1979* taxes in the amount of $3,986.57, including interest, and *1980* taxes in the amount of $38,500 excluding interest. By letter dated March 13, 1981 taxpayer's counsel requested the refund be remitted to taxpayer. Notwithstanding that demand, on March 25, 1981 township adopted a resolution authorizing the application of the refund and interest to the unpaid taxes due for 1979 and 1980. The resolution provided that

---

[1] The petition was assigned case No. 80–01807. Schedule A—"Creditors With Priority"—listed township's claim for taxes in the amount of $32,293.

... the Municipal Treasurer is hereby authorized to make a check payable to the Township of Washington Tax Collector all [sic] the amount due to the Washington Township Racquet Club and to apply said amount to all past due taxes according to the following calculations.

1978 Refund of Taxes
Lot 1 Block 2202

| | |
|---|---:|
| Tax refund | $8,482.32 |
| Interest | 1,010.78 |
| Total to be applied to unpaid taxes | $9,493.10 |
| Amount to be applied as follows: | |
| Nov. 1, 1979 taxes | $3,615.85 |
| Interest due | 370.72 |
| Total 1979 paid | $3,986.57 |
| February 1, 1980 taxes | $4,512.19 |
| Interest due | 994.35 |
| Total 1980 paid | $5,506.53 |

Total refund applied to unpaid taxes–$9,493.10

Taxpayer brought this action in lieu of prerogative writs on May 31, 1982, seeking payment of the refund and interest and claiming that the setoff was improper. Taxpayer further argues that the action was violative of the automatic stay provision of 11 *U.S.C.A.* § 362(a). Township contends the setoff was proper in light of the unpaid taxes and interest due, and that equity mandates approval of the setoff. It further asserts that taxpayer's action is untimely under *R.* 4:69–6(a), that the bankruptcy action has no relevance to this litigation and, assuming *arguendo* that it is relevant, that taxpayer's failure to affirmatively plead its bankruptcy and/or allege a violation by township of the bankruptcy laws, constitutes a waiver of the issue. Finally, township argues that if the court does choose to consider the merits of the bankruptcy, the setoff was proper and was not invalidated by the bankruptcy law. Township's arguments are without merit.

*R.* 4:69–6(a) provides:

... [N]o action in lieu of prerogative writ shall be commenced later than 45 days after the right of accrual of the right to the review, herein or relief claimed, except as provided by paragraph (b) of this rule.

Paragraph (b) is inapplicable to this matter. Paragraph (c), however, is very important and is the provision upon which this court relies. It permits the court to enlarge the 45-day period "where it is manifest that the interest of justice so requires."

In *Ward v. Keenan*, 3 *N.J.* 298, 308 (1949), the Supreme Court explained the purpose of the creation of in lieu proceedings as being a tactic to avoid "defects of procedure that lead to criticism" under the prior method of action. "As a result, exceptions based on prior decisional law were soon engrafted upon the rules governing in lieu proceedings." *Brunetti v. New Milford*, 68 *N.J.* 576, 586 (1975); *Schack v. Trimble*, 28 *N.J.* 40, 47–48 (1958). These exceptions are codified in paragraph (c) as follows:

(1) Substantial and novel constitutional questions and

(2) informal or ex parte determinations by administrative officials which do not involve a "sufficient crystalization of a dispute along firm lines to call forth the policy of repose" and where the right to relief depends on determination of a legal question; and

(3) an important public rather than private interest which requires adjudication or clarification.

This paragraph was added to the rule by amendment in 1957 and was intended to codify the exceptions "in the form of a generalized standard." *Schack, supra* at 48. Subsequent case law confirms the need for relaxation of the 45-day period of *R.* 4:69–6(a) "in the interest of justice" where matters of public interest require adjudication and/or clarification. *See Brunetti, supra; Reahl v. Randolph Tp. Municipal Utilities Auth.*, 163 *N.J.Super.* 501 (App.Div.1978); *Mathesius v. Mercer Cty. Improvement Auth.*, 177 *N.J.Super.* 626 (App.Div.1981), certif. den. 87 *N.J.* 425 (1981).

■ While it is true that the right to review the setoff action taken by township had existed for a period of more than 45 days prior to the commencement of taxpayer's prerogative writ pro-

ceeding, the court finds it reprehensible to permit township to benefit from an unlawful and unwarranted setoff of taxpayer's monies simply because the action could have been instituted at an earlier date. To reject the action as being untimely would be to condone an improper act and to disregard case law and legislation prohibiting such setoffs by a taxing district. *See Seatrain Lines v. Edgewater,* 4 *N.J.Tax* 378 (Tax Ct.1982); *Garden State Racing Ass'n v. Cherry Hill Tp.,* 1 *N.J.Tax* 569 (Tax Ct.1981); *Newark v. Central and Lafayette Realty Co., Inc.,* 150 *N.J.Super.* 18 (App.Div.1977); *Francis Realty Co. v. Newark,* 16 *N.J.Misc.* 328 (Cir.Ct.1938), and *Binder Realty Corp. v. Newark,* 19 *N.J.Misc.* 624 (Sup.Ct.1941). *Cf. Rothman v. River Edge,* 149 *N.J.Super.* 435 (App.Div.1977).

While a refund to taxpayer for overpaid taxes is of a personal and individualized nature, the question of the power of a township to set off against a refund for taxes unpaid and due is an issue of public importance requiring adjudication. The high level of public interest involved and the nature of the controversy afford sufficient and just cause for exercising the authority given to the court by *R.* 4:69–6(c) and require consideration of the merits of this matter.

Township further asserts that taxpayer's failure to affirmatively plead its bankruptcy and/or township's alleged violation of the bankruptcy laws constitute a waiver of the bankruptcy issues. As provided by *R.* 4:5–4, the sole defense involving bankruptcy which must be affirmatively pleaded is that of discharge in bankruptcy. Since that is not an issue in this case, township's assertion is without merit and need not be further addressed.

Most dispositive of the matter is the existence of taxpayer's bankruptcy proceeding which was instituted on May 19, 1980.

... [I]f, prior to bankruptcy, the debtor has overpaid the new tax, the right to a refund thereof is property that passes to the trustee as "property, including rights of action, which prior to the filing of the petition [the debtor] could by any

means have transferred," even though the right is undetermined at the date of bankruptcy.  [88 *Harv.L.Rev.* 1360, 1442 (May 1975) ]

*Plumb, The Tax Recommendations of the Commission on the Bankruptcy Tax Law Procedures; Bankruptcy Act,* § 70a(5), 11 *U.S.C.* § 110(a)(5) (1970); *see, also, Kokoszka v. Belford,* 417 *U.S.* 642, 94 *S.Ct.* 2431, 41 *L.Ed.2d* 374 (1974); *Segal v. Rochelle,* 382 *U.S.* 375, 86 *S.Ct.* 511, 15 *L.Ed.2d* 428 (1966); Rev.Rul. 72–387, 1972–2 *Cum.Bull,* 632.

Overpayment of taxes to township is evidenced by the Tax Court judgment.  Since overpayment by taxpayer was made prior to the bankruptcy action, the refund passed to the trustee as property of the estate and therefore was property beyond the reach of creditors, including defendant township.

Inaction on the part of township is mandated by the provisions of § 362(a) of 11 *U.S.C.A.,* also known as the automatic stay provision of the 1978 Bankruptcy Act.  The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It prohibits all collection attempts, enforcement of liens and harassment by providing the debtor with a breathing spell from each of his creditors.  Particular reference is made to paragraphs (5) and (7) of § 362(a).  Paragraph (5) stays any and all acts to create or enforce a lien against property of the debtor, that is, most property that is acquired after date of filing of the bankruptcy petition, exempt property and property not passing to the estate, to the extent the lien secures a prepetition claim.  To permit postbankruptcy lien creation or enforcement would allow a creditor to benefit from preferential treatment and would possibly circumvent debtor's discharge.  Paragraph (7) stays setoffs of mutual debts and credits between the debtor and creditors.  These provisions do not affect the rights of creditors; they merely stay the enforcement of such rights pending final disposition of the bankruptcy proceeding.

Aside from the limited exceptions found in paragraph (b) of the Bankruptcy Act[2] the scope of the stay is extremely broad. The stay is effective as of the date the petition in bankruptcy is filed. Actions taken in violation of the stay are null and void. *See Kalb v. Feuerstein,* 308 *U.S.* 433, 60 *S.Ct.* 343, 84 *L.Ed.* 370 (1940), and *Caribbean Food Products, Inc. v. Banco Credito y. Ahorro Ponceno,* 575 *F.*2d 961 (1 Cir.1978) (turnover of accounts collected in violation of stay).

In this matter the stay became effective May 19, 1980, the date taxpayer filed its chapter 11 petition. The adoption of the resolution by township on March 25, 1981 clearly violated the stay. As a result, the court is precluded from finding the action to be valid.

The automatic stay has been held applicable to all entities, including governmental units. *See In re Eisenberg,* 3 *C.B.C.*2d 440, 448, 7 *B.R.* 683 (Bkrtcy.E.D.N.Y.1980) (waiver of sovereign immunity); *In re Allen,* 1 *C.B.C.*2d 808, 3 *B.R.* 360 (Bkrtcy.W.D. Wash.1980). The legislative intent underlying the applicability of the automatic stay provision to governmental units reveals that it was intended to be an express waiver of sovereign immunity and an assertion of the bankruptcy power over state governments under the Supremacy Clause notwithstanding state

---

[2]All exceptions as found in subsection (b) are inapplicable to the case at hand. They include:
1. Criminal proceedings
2. Alimony, maintenance or support collection from property which is not property of the estate.
3. Perfection of interests in property
4. Commencement or continuation of judicial or administrative proceedings to enforce a government unit, police or regulatory power
5. Enforcement of non-money judgment by a government unit
6. Commodities and securities setoffs
7. Commencement of HUD foreclosures
8. The issuance of notice of tax deficiency by a government unit
9. Exceptions in chapter 11 reorganizations

sovereign immunity. *See H.R.Rep. No. 595, 95th Cong., 1st sess.* 342 (1977), Report of the Committee on The Judiciary, House of Representatives to accompany H.R. 8200; *S.Rep. No. 989, 95th Cong., 2d Sess.* 51 (1978); U.S.Code Cong. & Admin.News 1978, p. 5787; *Collier on Bankruptcy* (15 ed. 1979), Appen. 2, § II at 342.

The stay is not permanent in character. Its durational scope as defined in § 362(c)(1), (2) provides for termination of the stay when the property ceases to be part of the estate (*i.e.,* sale, exemption or abandonment) or the earliest of the time of case completion, dismissal, discharge, grant or denial. A most adequate provision for creditor's relief from the stay is found in § 362(d) through (g) whereby the court may terminate the stay on request of the party in interest. Hence a creditor seeking to assert a setoff will be required to proceed under subsection (d) before the setoff can be made. There is no evidence before the court that township sought such relief, nor is there evidence that the stay was terminated with respect to township.

■ While, pursuant to § 362(b)(8), a governmental unit is not automatically stayed from issuing a notice of a tax deficiency, all other assessment and collection proceedings are stayed under § 362(a). *Collier on Bankruptcy* (15th ed. 1979), § 362.05, § (8), at 362–40. The setoff action taken by township more than ten months after the institution of taxpayer's bankruptcy proceeding is clearly a type of "other assessment and collection proceeding" which is stayed under § 362(a). The court finds that township's action was improper and that the tax refund remains due and owing.

Plaintiff's motion for summary judgment is granted. Counsel shall submit an appropriate order directing township to remit to the trustee the sum of $8,482.32 together with interest pursuant to *N.J.S.A.* 54:3–27.2 and *R.* 4:42–11(a), plus costs.